```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
                                         :
CLARK ADAMS                              :
                                         :
                                         :
                                         :
v.                                       :   CIV. NO. 3:06CV1166 (HBF)
                                         :
YALE-NEW HAVEN HOSPITAL                  :
                                         :
```

## RULING ON MOTIONS IN LIMINE

A hearing was held on the parties' Motions in Limine on February 4, 2008.

### Defendant's Motion in Limine **[Doc. #59]**

1. <u>1998 Transfer Application</u>

Plaintiff seeks to include in this action a claim of race and gender discrimination in connection with the failure of the Hospital to hire him in 1998 for an opening in the Department of Surgery. [Doc. #1 ¶¶7-10]. Defendant argues that this claim is time barred under Title VII, the Connecticut Fair Employment Practices Act ("CFEPA"), and 42 U.S.C. § 1981.

<u>Title VII and CFEPA</u>

Defendant seeks to preclude this claim because "plaintiff did not allege in his administrative complaint that Yale New Haven Hospital discriminated against him when he was not the successful candidate for the 1998 opening in the Department of Surgery." [Doc. #59 4-5]. "An individual wishing to challenge an employment practice under [Title VII] must first file a charge

1

with the EEOC." Ledbetter v. Goodyear Tire & Rubber Co., Inc., - U.S. - , 127 S. Ct. 2162, 2166 (2007) (citing, 42 U.S.C. §2000e-5(e)(1)). "Such a charge must be filed within a specified period (either 180 or 300 days, depending on the State) after the alleged unlawful employment practice occurred, and if the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court, § 2000e-5(f)(1)." Id. 127 S. Ct. at 2166-67 (internal quotation marks omitted). Since plaintiff did not include the denial of his 1998 application for transfer in his CHRO complaint, he is barred from pursuing that claim in this action under both Title VII and the CFEPA.[1]

Even if plaintiff had included an allegation regarding the 1998 transfer application in his CHRO complaint, that administrative complaint was filed on August 20, 2003, five (5) years after the alleged conduct, and is thus time barred.

> In general, Title VII discrimination claims must be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the date on which the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). If, however, a claimant has filed a charge of discrimination in a state or locality that has its own anti-discrimination laws and enforcement agency, the time period for filing claims with the EEOC is extended to 300 days from the date of the unlawful practice. Id.; see Edelman v. Lynchburg Coll., 535 U.S. 106, 109 n. 1 (2002); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).

---

[1] Defendant correctly states that under the work sharing agreement of the EEOC and the CHRO, "a filing with the CHRO is properly deemed to be a filing with the EEOC." Lewis v. State of Connecticut Dept. of Corrections, 355 F. Supp. 2d 607, 615-16 (D. Conn. 2005).

> Connecticut has its own anti-discrimination agency, the CHRO. Thus, the 300-day limitation applies to the Plaintiff's claims here. "This requirement functions as a statute of limitations, . . . in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court . . . ." Quinn, 159 F.3d at 765 (internal citations omitted); see Ledbetter, - U.S. -, 127 S. Ct. at 2166-67 ("[I]f the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court. . . .")

Wilks v. Elizabeth Arden, Inc., 507 F. Supp. 2d 179, 190-191 (D. Conn. 2007).

Here, the CHRO complaint was filed on August 20, 2003, well beyond three hundred (300) days after the refusal to transfer plaintiff in 1998. Thus, even if plaintiff's CHRO complaint included a claim alleging discrimination in connection with the 1998 transfer application to the Department of Surgery, it would be time barred.

Accordingly, this claim is time barred under Title VII and under the Connecticut Fair Employment Practices Act ("CFEPA"), see Conn. Gen. Stat,. §46a-82(e) ("Under CFEPA, an individual must file a charge with the CHRO within 180 days of the alleged discrimination.").

At oral argument, plaintiff argued that the denial of his 1998 transfer application is part of a 'continuing violation' and thus this claim is not time barred. See Pearson v. Bd. of Educ., 499 F. Supp. 2d 575, 590 (S.D.N.Y. 2007) ("[d]iscriminatory acts occurring before the 300-day charging period may be saved from time bar by the 'continuing violation'

3

doctrine, which offers one means by which plaintiffs can assert otherwise time-barred acts, as 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'") (quoting Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 25 (2d Cir. 1985)). However, "the continuing violation exception is usually associated with a discriminatory policy, rather than with individual instances of discrimination . . . ." Id. At oral argument, plaintiff's counsel conceded that plaintiff was hired by the Department of Surgery in 1999. More importantly, the decision makers involved in the decision in 1998 were not the same Doctors charged with instituting on-call for the Physician Associates in 2002 or for hiring the Lead Physician Associate after plaintiff's job transfer. On this record, the Court finds that the 1998 transfer application was a "discrete act" and not part of a "continuing violation."

Accordingly, on this record, defendant's Motion in Limine to preclude testimony regarding the 1998 transfer application is **GRANTED**.

2. 42 U.S.C. § 1981

Defendant also argues that (1) plaintiff's 1998 transfer application claim; (2) the claim arising from the institution of the on-call hours requirement in November 2002; and (3) claims arising from plaintiff's transfer in March 2003, are all time barred by the statute of limitations under Section 1981.

"Since § 1981 does not have a statute of limitation, federal

4

courts use the most analogous statute of limitations in claims brought under § 1981. In Connecticut, the applicable period is the three year statute of limitations in tort." Holt v. KMI-Continental, Inc., 95 F.3d 123, 121 (2d Cir. 1996) (internal citations omitted). As set forth above, the refusal to permit the plaintiff to transfer occurred in 1998. Plaintiff was notified on November 19, 2002, that he had sixty days to agree to work the on call hours or be terminated. Plaintiff voluntarily transferred to the Department of Medicine in March 2003. Plaintiff filed his complaint in the District Court on July 28, 2006. Since plaintiff filed his complaint more than three years after the latest of these actions occurred, on this record, the §1981 claim is barred by the statute of limitations.

At oral argument, plaintiff asked the Court to reserve its decision until after he presents his case and the evidence is established.

Accordingly, a ruling on defendant's Motion to Preclude Plaintiff's Section 1981 claims, construed here as a Motion to Dismiss, is **RESERVED**. Defendant may renew this motion at the conclusion of plaintiff's evidence. The Court understood from counsel's argument that the plaintiff would offer testimony about the on call dispute and the 2003 transfer in connection with his other claims.

3. <u>Sister's Employment, Brother's Medical Treatment and Medical Treatment of Other Patients</u>

Defendant seeks to preclude plaintiff from testifying about

his sister's employment with the defendant and the medical treatment his brother and other patients received from the defendant because he has no standing to make those claims and the issues are irrelevant to his claims of discrimination. Defendant also seeks to preclude testimony regarding plaintiff's voluntary termination of employment with Yale as irrelevant to the issues to be decided in this case.  At oral argument, plaintiff consented to the motion in limine on these grounds.

Accordingly, defendant's Motion is Limine is **GRANTED** on consent on these issues.

4.   CHRO's Finding of Reasonable Cause

Defendant seeks to preclude plaintiff from testifying about the CHRO's finding of "reasonable cause" because the danger of unfair prejudice outweighs its probative value.

Here, the CHRO made a determination that there was "reasonable cause" to permit plaintiff to proceed to a public hearing.  Plaintiff declined to do so, instead requesting a release of jurisdiction in order to file this action.  The CHRO made no further findings in his case.

In Keene v. Harford Hosp., 208 F. Supp. 2d 238 (D. Conn. 2002), the defendants moved to strike the reasonable cause determination by the CHRO from consideration on a Motion for Summary Judgment. The Court reviewed the motion to strike under the public records exception to the hearsay rule, stating,

> Factual findings in public records, which would include "conclusions or opinions" based on those facts, made after an investigation

6

> authorized by legal authority are presumptively admissible absent "information or other circumstances [that] indicate lack of trustworthiness." Bridgeway Corp. v. Citibank, 201 F.3d 134, 143 (2d Cir. 2000) (citing Fed. R. Evid. 803(8)(C); Gentile v. County of Suffolk, 926 F.2d 142, 148 (2d Cir.1991)). "Findings of the EEOC or equivalent state agencies" fall within the ambit of the public records exception to hearsay. See Paolitto v. John Brown E. & C., Inc., 151 F.3d 60, 64 (2d Cir. 1998).
>
> The party seeking to strike public records has the burden to establish lack of trustworthiness. Bridgeway, 201 F.3d at 143 (citing Ariza v. City of New York, 139 F.3d 132, 134 (2d Cir. 1998)); see Fed. R. Evid. 803(8)(C) advisory committee's note ("Hence the rule ... assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present."). In assessing trustworthiness, the court considers "(1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; [and] (4) [any motive of the investigator inconsistent with accuracy]." Fed. R. Evid. 803(8)(C) advisory committee's note (citations omitted). The court may consider other factors, including the finality of the report or record as an official finding. Gentile v. County of Suffolk, 129 F.R.D. 435, 458 (E.D.N.Y. 1990) (citing United Air Lines, Inc. v. Austin Travel Corp., 867 F.2d 737, 742-43 (2d Cir. 1989)). Ultimately, the court has the discretion to determine "whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." City of New York v. Pullman Inc., 662 F.2d 910, 914 (2d Cir. 1981).

Keene, 208 F. Supp. 2d at 242-43.

In granting the motion to strike in Keene, the Court found that "the CHRO document [was] a preliminary investigation into

7

whether discrimination could have occurred. The findings and determination were subject to final review and hearing by a CHRO Hearing Officer." Id. 208 F. Supp. 2d at 243. See also, Dodson v. CBS Broadcasting, Inc., 423 F. Supp. 2d 331, 334-35(S.D.N.Y. 2006) ("At trial, plaintiff will be able to introduce all relevant evidence, whether or not it was considered by the EEOC. Given the low probative value of the EEOC determination compared to the risk that the jury will be unduly influenced despite any limiting instruction, the Court will exclude the document.").

Here, the CHRO letter dated February 2, 2006, states that the "[i]nvestigation . . . has led the investigator to determine that there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint." [Pl. Ex. 50]. Defendant argued that these findings are unreliable because the parties were not permitted to call witnesses or ask questions and plaintiff was never cross-examined. A final determination was not made by the CHRO that discrimination occurred. At trial, the parties will be able to introduce all relevant evidence, whether or not it was considered by the CHRO, including an opportunity to question and cross examine live witnesses. In exercising its discretion, this Court **GRANTS** defendant's Motion in Limine to preclude the CHRO reasonable cause determination.

4. Dr. Udelsmann

At his deposition, plaintiff testified that when he first

8

met Dr. Udelsmann, the Chair of the Department of Surgery, Dr. Udelsmann asked whether plaintiff was about to transport a patient to another location in the hospital. Plaintiff interpreted this to mean that Dr. Udelsmann thought that plaintiff, as a black man, must have been engaged only in a menial task. Defendant seeks to preclude plaintiff from offering this testimony as evidence of a discriminatory motive.

First, defendant argues that the comment is a single race neutral remark. More importantly, defendant points out that Dr. Udelsmann was not involved in fixing the surgical residency program and/or instituting on-call for Physician Associates and he was not involved in the decision to hire the Lead Physician Associate. Instead, it was Doctors Seashore and Shaw who made the decision to require that plaintiff work an on-call schedule.

The Second Circuit has held that "stray comments" cannot be used to prove unlawful discrimination. See Abdul-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) ("T]he stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination."). See also Danzer v. Norden Systems, Inc. 151 F. 3d 50, 56 (2d Cir. 1998). On the current record, plaintiff has not even shown that Dr. Udelsmann was a decision maker involved in the events at issue in this litigation.

At oral argument, plaintiff asked the Court to wait for the evidence before precluding testimony regarding Dr. Udelsmann. Before plaintiff elicits any testimony from plaintiff regarding

9

Dr. Udelsmann, counsel must lay a proper foundation of Dr. Udelsman's involvement in the discriminatory acts complained of, proffering on the record, out of the presence of the jury, facts to establish the claimed materiality and admissibility of the evidence.

5. <u>Loss of Income</u>

Defendant objects to the admission of evidence to support a claim for loss of income as untimely. Defendant understands that plaintiff may seek to argue that he would have received higher raises in the Department of Surgery if he remained as compared with the raises he received in the Department of Medicine. Defendant contends that plaintiff has not provided any damages analysis to defendant to date, despite defendant's request, and should be precluded from offering this evidence at trial. Defendant also argues that plaintiff's testimony on pay raises he believes he would have or should have received should be precluded. Before plaintiff elicits any testimony from plaintiff, or seeks to admit evidence, regarding loss of income, counsel must make a proffer on the record out of the presence of the jury of facts establishing the materiality and admissibility of the evidence, and relevant case law.

6. <u>Discriminatory Hiring Practices</u>

Defendant objects to any testimony or evidence that may

raise a claim of discriminatory hiring practices. Plaintiff, at his deposition, referenced that he was the only African-American Physician Associate out of fourteen (14). Defendant objects to the extent that plaintiff may be raising a new claim or may seek to testify about this. Before plaintiff elicits any testimony from plaintiff, or seeks to admit evidence, regarding the racial make up of defendant's Physician Associates, counsel must make a proffer on the record out of the presence of the jury of facts establishing the materiality and admissibility of the evidence, and relevant case law.

7. Title VII and CFEPA

Plaintiff argues that CFEPA may entitle his client to damages above the statutory cap under Title VII, citing Oliver v. Cole Gift Centers, Inc., 3:97CV2595(GLG), 2000 WL 435436, *2-3 (D. Conn. Feb. 17, 2000), for the proposition that if damages exceed the statutory cap under Title VII, damages in excess of the cap should be allocated to plaintiff's claim under CFEPA in order to maximize recovery. In Oliver, the Court declined such an allocation as "inappropriate," "particularly where, as here, the plaintiff is adequately compensated by the damage award as capped under the federal scheme." Id. 2000 WL 435436, at *3. Judge Goettel added, "[t]he court must consider as a whole the various forms of relief available under each statutory scheme in determining which theory of liability provides plaintiff with the greatest recovery." Id.

Since the elements of liability are the same under both Title VII and CFEPA, the Court in <u>Oliver</u> submitted the issue to the jury as a single question, as was the damage finding. <u>Id.</u> 2000 WL 435436, at *4. The Court will take up this matter with counsel when considering the charge to the jury.

<u>Plaintiff's Motion in Limine</u> **[Doc. #67]**

Plaintiff moves to preclude all references to a co-worker sexual harassment complaint against plaintiff as irrelevant and prejudicial. Defendant agrees that this line of questioning would not be relevant unless plaintiff discusses his reasons for leaving his employment at Yale which the Court has precluded, or otherwise opens the door. Accordingly, the Court **RESERVES** a decision on this motion and will decide the issue in the context of the trial, should it arise. Defendant will inform the Court and plaintiff's counsel of his intention to raise this with plaintiff, prior to bringing up the subject before the jury.

Jury selection is scheduled for Monday, February 11, 2008, with presentation of the evidence to begin Monday afternoon. The parties will present brief opening statements. There will be no trial on Wednesday, February 13, 2008.

ENTERED at Bridgeport this 8th day of February 2008.

\_\_\_/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE