UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| CLARK ADAMS | : | |
| | : | |
| v. | : | CIV. NO. 3:06CV1166 (HBF) |
| | : | |
| YALE-NEW HAVEN HOSPITAL | : | |
| | : | |
| | : | |
| | : | |

RULING ON MOTION FOR SUMMARY JUDGMENT

Clark Adams, a male African-American physician's assistant
("P.A."), filed a complaint against his former employer, Yale-
New Haven Hospital ("YNHH"), alleging that YNHH discriminated
against him on the basis of his race and gender and retaliated
for his complaints of discrimination in violation of Title VII
and 42 U.S.C. §1981.  At trial, a jury found in plaintiff's
favor on his gender discrimination claim, the only claim
presented to the jury.[1] YNHH then asked this Court to set aside
the verdict and to enter judgment in its favor notwithstanding
the verdict or, in the alternative, to grant defendant a new
trial.  This Court granted defendant's motion to set aside the
verdict and for a new trial. [Doc. #114]. A new trial was
ordered solely on the gender discrimination claim. [Doc. #119].

---

[1] On February 14, 2008, the Court granted defendant's oral motion for
directed verdict on plaintiff's Title VII and Connecticut Fair
Employment Practice Act claims on the basis of race discrimination and
reserved decision on plaintiff's claim of gender discrimination. [Doc.
#82].

Defendant then sought leave to file a Motion for Summary Judgment on the Title VII and Connecticut Fair Employment Practices Act ("CFEPA") gender discrimination claims, which this Court granted.  [Doc. # 142]. For the reasons that follow, YNHH's Motion for Summary Judgment **[doc. #143]** is **GRANTED**.


I.   STANDARD OF REVIEW

     The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, see Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." Id. In short, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

2

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (citations omitted) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). However, "[s]ummary judgment is appropriate even in discrimination cases," Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), where a plaintiff's argument is "based on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct, . . ." Tojzan v. N.Y. Presbyterian Hosp., No. 00 Civ. 6105(WHP), 2003 WL 1738993, at *4 (S.D.N.Y. March 31, 2003).

II.   PROCEDURAL BACKGROUND

A jury trial was held February 11 through February 15, 2008. [Def. 56(a)(1) Stat., Doc. 143-2, ¶1].  On February 15, 2008, this Court granted defendant's motion for directed verdict as to the plaintiff's (1) Title VII and CFEPA claims of racial and gender discrimination resulting in plaintiff's involuntary transfer to the Department of Medicine; (2) Title VII and CFEPA

3

claims of gender discrimination based on the disparate treatment
of Heather Orosco; (3) retaliatory claims of failure to hire the
plaintiff into the Lead P.A. position, motivated by his filing
of complaints alleging racial and gender discrimination under
Title VII; and (4) Title VII and CFEPA claims of racial
discrimination in defendant's appointment of Rita Rienzo to the
Lead P.A. position. Id. ¶2.

This Court reserved decision on defendant's motion for a
directed verdict as to plaintiff's Title VII and CFEPA claims of
gender discrimination in defendant's appointment of Ms. Rienzo
to the Lead P.A. position.  Id. ¶3.  On February 15, 2008, the
jury rendered a verdict in favor of plaintiff on these Title VII
and CFEPA claims of gender discrimination.  Id. ¶4. On February
21, 2008, defendant moved to set aside the verdict and for
judgment notwithstanding the jury verdict or, in the
alternative, for a new trial. Id. ¶5.  On September 30, 2008,
this Court granted defendant's motion to set aside the verdict
and for a new trial and denied the defendant's motion for
judgment notwithstanding the jury verdict. Id. ¶6.

In the Court's written ruling, the undersigned found that
the evidence did not support the jury's conclusions that (1)
plaintiff was qualified for the Lead P.A. position; (2)
plaintiff's gender motivated defendant to appoint Ms. Rienzo as
the Lead P.A.; (3) plaintiff suffered an adverse employment

4

action; or (4) defendant's failure to promote plaintiff was due to gender discrimination.[2]  Id. ¶8.

On June 28, 2011, during a pretrial conference, plaintiff requested a new trial on all of the claims raised in his complaint and the defendant requested permission to move for summary judgment. Id. ¶9.  The parties objected to each other's requests and briefed the issues.  Id. ¶9.   This Court denied plaintiff's motion for a new trial on all claims raised in his complaint and granted defendant's motion for leave to move for summary judgment. Id. ¶10.


III.  UNDISPUTED FACTS

Based on the parties' Local Rule 56(a) Statements, summary judgment briefs, and trial records, the following facts are undisputed.[3]

The plaintiff, Rita Rienzo and Heather Orosco were P.A.'s in the Department of Surgery at YNHH. Id. ¶13.  Plaintiff is a

---

[2] While the plaintiff admits this Local Rule 56(a)(1) finding, he denies the substance.  However, in reviewing the evidence, the Court finds that even though the plaintiff may not agree with the Court's finding, this fact nonetheless accurately recounts what the Court found. Accordingly, the Court deems paragraph 8 admitted. See Eiden v. McCarthy, 531 F. Supp. 2d 333, 338 (D. Conn. 2008).
[3] Plaintiff admitted the facts set forth in paragraphs 1-7, 9-13, 17, 21, 28, and 29 of defendant's Local Rule 56(a)(1) Statement. The plaintiff "admit[ted] in part" to information contained in paragraphs 14 and 24. Plaintiff "admit[ted] finding, den[ied] substance" of paragraph 8.

black male, and both Ms. Rienzo and Ms. Orosco are white females. Id. ¶11, ¶12.

The Accreditation Council for Graduate Medical Education ("ACGME") informed the defendant that new requirements concerning resident work hours and workload would be formally imposed in 2004.[4] Id. ¶14.  As such, Dr. John Seashore, the Yale School of Medicine physician in charge of the residency program at YNHH, decided to hire twelve P.A.'s to bring the hospital into compliance, and YNHH agreed with the plan.[5]  Id. ¶15, [Tr. Feb. 14, 2008 at 4].

Dr. Seashore met with plaintiff, Ms. Rienzo, and Ms. Orosco and informed them of the impending ACGME requirements and the plan to hire additional P.A.'s. Id. at ¶16.  He also informed them that they, along with the new P.A.'s, would be required to work on-call hours[6].  Id. at ¶16. Plaintiff, Ms. Rienzo and Ms.

---

[4] Although plaintiff only admits in part this Local Rule 56(a)(1) statement, he failed to provide a specific citation, required by Local Rule 56(a)(3), to counter defendant's statement at ¶14 that the Council had revoked the accreditation of defendant's resident program due to "negligence and misconduct." 56(a)(2) at ¶14. However, the Court finds that this denial is irrelevant to defendant's statement.  Accordingly, the Court deems paragraph 14 admitted. See Eiden v. McCarthy, 531 F. Supp. 2d at 338.
[5] Plaintiff denies this Local Rule 56(a)(1) statement. The Court reviewed the trial record from February 14, 2008 and the evidence offered by plaintiff and found that plaintiff offered no evidence that these facts are in dispute. Accordingly, the Court deems paragraph 15 admitted. See Eiden, 531 F. Supp. 2d at 338.
[6] Plaintiff denies this Local Rule 56(a)(1) statement. The Court reviewed the trial record from February 14, 2008 and the

Orosco all expressed dissatisfaction with the requirement to work on-call hours. Id. at ¶17.  Dr. Seashore and Dr. Richard Stahl sent letters to plaintiff and Ms. Rienzo which stated the requirement to work on-call hours and indicated that they would receive a twenty percent pay raise.[7]  Id. at ¶18.  Dr. Seashore and Dr. Stahl did not send a letter to Ms. Orosco because she worked in the transplant service, which had different needs from the Department of Surgery and her supervisor did not want her to take call.[8]  Id. at ¶19.  Plaintiff, Ms. Rienzo and Ms. Orosco were orally given the same three options regarding their position: (1) remain in the Department of Surgery, and take call; (2) transfer to a different department within the hospital; or (3) seek other employment.[9]  Id. at ¶20.  The three P.A.'s were also informed that they could remain in the

---

evidence offered by the plaintiff and found that plaintiff offered no evidence that these facts are in dispute. Accordingly, the Court deems paragraph 15 admitted. See Eiden, 531 F. Supp. 2d at 338.

[7] Plaintiff denies this Local Rule 56(a)(1) statement yet the Court has reviewed the evidence provided by the plaintiff and found nothing to show that this fact is disputed.  Accordingly, the Court deems paragraph 18 admitted.  See Eiden, 531 F. Supp. 2d at 338.

[8] Plaintiff denies this Local Rule 56(a)(1) statement yet the Court finds that plaintiff has offered no evidence to show that this fact is disputed. Accordingly, the Court deems paragraph 19 admitted. See Eiden 531 F. Supp. 2d at 338.

[9] Plaintiff denies this Local Rule 56(a)(1) statement yet the Court finds that the plaintiff has offered no evidence to show that this fact is disputed. Accordingly, the Court deems paragraph 20 admitted. See Eiden, 531 F. Supp. 2d at 338.

Department of Surgery without taking call until all the new P.A.'s had been hired. Id. at ¶20.  Plaintiff, Ms. Rienzo and Ms. Orosco never took call.  Id. at ¶21.

In March of 2003, plaintiff voluntarily transferred from the Department of Surgery to the Department of Medicine in order to avoid taking call.[10]  Id. at ¶23.  When plaintiff transferred to the Department of Medicine, he continued to be employed as a P.A. and did not suffer any decrease in pay or benefits.  Id. at ¶24. He continued to receive yearly salary increases until he chose to leave his employment with YNHH.[11]  Id. at ¶24.  In April 2003, a Lead P.A. position was posted and no one applied for it.[12]  Id. at ¶25.  In June 2003, Ms. Orosco left the employment of YNHH.  Id. at ¶26. In the summer of 2003, Dr. Seashore and Dr. Stahl hired an African American man to replace Ms. Orosco.[13]

_____

[10] Plaintiff denies this Local Rule 56(a)(1) statement yet the Court finds that plaintiff has offered no evidence to show that this fact is disputed. Accordingly, the Court deems paragraph 23 admitted. See Eiden, 531 F. Supp. 2d at 338.

[11] Plaintiff denies this Local Rule 56(a)(1) statement yet the Court finds that plaintiff has offered no evidence to show that this fact is disputed. Accordingly, the Court deems paragraph 24 admitted. See Eiden, 531 F. Supp. 2d at 338.

[12] Plaintiff denies this Local Rule 56(a)(1) statement as written, stating that, "No one applied for the position in April because that position has [sic] call responsibilities."  The evidence offered by plaintiff proves that the position posted in April 2003 did have call responsibilities, which was not disputed at trial.

[13] Plaintiff denies this Local Rule 56(a)(1) statement yet the Court finds that the plaintiff has offered no evidence to show

Id. at ¶27. In the late summer or early fall, Dr. Stahl approached Ms. Rienzo about the Lead P.A. position.  Id. at ¶28. In October 2003, Ms. Rienzo accepted the Lead P.A. position. Id. at ¶29. At the time Dr. Stahl approached Ms. Rienzo regarding the Lead P.A. position, Ms. Rienzo was the only P.A. in the Department of Surgery.[14]  Id. at ¶30.  Plaintiff had transferred to the Department of Medicine and Ms. Orosco had left her employment with YNHH.[15]  Id. at ¶30.


IV.  DISPUTED FACTS

Based on the parties' Local Rule 56(a) Statements, summary judgment briefs, and trial records, the following facts are disputed.

Defendant states that, "Neither Ms. Rienzo nor Ms. Orosco received a permanent dispensation from the on-call requirements; rather they were informed that once all of the new P.A.'s had been hired, they would be required to either work the on-call

---

that this fact is disputed. Accordingly, the Court deems paragraph 27 admitted. See Eiden, 531 F. Supp. 2d at 338.

[14] Plaintiff denies this Local Rule 56(a)(1) statement yet the Court finds that plaintiff has offered no evidence to show that this fact is disputed. Accordingly, the Court deems paragraph 30 admitted. See Eiden, 531 F. Supp. 2d at 338.

[15] The plaintiff denies this Local Rule 56(a)(1) statement yet the Court finds that the plaintiff has offered no evidence to show that this fact is disputed. Accordingly, the Court deems paragraph 30 admitted. See Eiden, 531 F. Supp. 2d at 338.

hours or leave the department." Id. at ¶22.  Plaintiff accurately states that Rienzo did not have to pull call after being promoted Lead P.A. within the Department of Surgery. [56(a)(2) Stat., Doc. 149-2, ¶22].  Plaintiff does not necessarily dispute paragraph 22 so much as explain the fact with additional information.

Defendant also states, "Under the defendant's Job Posting Policy, the head of the department is required to offer a vacant position to qualified candidates within the department before issuing a hospital-wide posting.  Department employees then have seven days within which to apply for the position.  The position is only posted outside the department when 'it is determined that a vacancy is not likely to be filled by a candidate from within the department.'" [56(a)(1) Stat., Doc. 143-2, ¶31]. Defendant also avers, "Since Ms. Rienzo was the only P.A. in the Department of Surgery, she had first priority for the Lead P.A. position.  Accordingly, plaintiff could not have been hired into the position if Ms. Rienzo wanted the job." Id. at ¶32. However, plaintiff accurately states that YNHH's Job Posting Policy allows for exceptions. [56(a)(2) Stat., Doc. 149-2, ¶31, ¶32].

Defendant's paragraphs 33-35 represent conclusions of law and not material facts, for which defendant does not provide any citations as required by Rule 56(a)(3).  [56(a)(1) Stat., Doc.

143-2, ¶ 33-35].  While plaintiff denies these statements, the Court will not address these paragraphs since they do not represent material facts.

As set forth below, the Court finds that these facts are not material so as to preclude entry of summary judgment in defendant's favor.


V.   <u>DISCUSSION</u>

Plaintiff alleges that YNHH discriminated against him in violation of Title VII and CFEPA on the basis of gender. Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). CFEPA directs that, "[i]t shall be a discriminatory practice in violation of this section [][f]or an employer[]. . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex. . ." Conn. Gen. Sta. §46a-60(a)(1).  The CFEPA claim will be analyzed in the same manner as the Title VII claim because the "Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFEPA." <u>Williams v. Quebecor World Infiniti Graphics</u>, 456 F. Supp. 2d 372, 383 (D. Conn. 2006)(citing <u>Levy v. Commission of</u>

11

Human Rights and Opportunities, 236 Conn. 96, 103 (1996)).
Accordingly, the Court will analyze the plaintiff's CFEPA and
Title VII claims together.

To establish a prima facie discriminatory treatment case
based on an adverse employment action, a plaintiff must show,
"1) that he belonged to a protected class; 2) that he was
qualified for the position he held; 3) that he suffered an
adverse employment action; and 4) that the adverse employment
action occurred under circumstances giving rise to an inference
of discriminatory intent." Feingold v. New York, 366 F.3d 138,
152 (2d Cir. 2004) (citing Collins v. New York City Transit
Auth., 305 F.3d 113, 118 (2d Cir. 2002)).

"An 'adverse employment action' is one which is 'more
disruptive than a mere inconvenience or an alteration of job
responsibilities.'" Id. (quoting Galabya v. New York City Bd. of
Educ., 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of
materially adverse employment actions include termination of
employment, a demotion evidenced by a decrease in wage or
salary, a less distinguished title, a material loss of benefits,
significantly diminished material responsibilities, or other
indices . . . unique to a particular situation." Feingold, 366
F.3d at 152 (internal quotation marks and alterations omitted).
An adverse employment action "may or may not entail economic
loss, but there must be a link between the discrimination and

some 'tangible job benefits' such as 'compensation, terms, conditions or privileges' of employment." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)(quoting Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994)). Plaintiff's burden at this stage of the analysis is "minimal." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001).

　　"Once a plaintiff has made out a prima facie case, the employer is required to offer a legitimate, nondiscriminatory business rational for its conduct." Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); Stern v. Trustees of Columbia University in City of New York, 131 F.3d 305, 312 (2d Cir. 1997) ("defendant has the burden of producing, through the introduction of admissible evidence, reasons for its actions, which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."). If defendant states a neutral reason for the adverse action, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that defendant's employment decision was more likely than not based in whole or in part on discrimination." Stern, 131 F.3d at 312; Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). A neutral reason "cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was

13

false, <u>and</u> that discrimination was the real reason." <u>St. Mary's</u>
<u>Honor Ctr. v. Hicks</u>, 509 U.S. 502, 515 (1993) (emphasis in
original). In other words, plaintiff must offer proof "through
presentation of his own case and through cross-examination that
would allow a rational fact finder to conclude that the
proffered reason was not the true reason for the adverse
employment action." <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d,
129 135 (2d Cir. 2000)(internal citation omitted).

The defendant does not contest that plaintiff established
the first prong of his prima facie case under Title VII as
plaintiff is male.  Defendant argues, however, that plaintiff
fails to establish that he was qualified for the Lead P.A.
position because he was not eligible to apply at the time the
position was filled.  Furthermore, defendant argues that YNHH's
requirement to take call, plaintiff's transfer to the Department
of Medicine, and his subsequent ineligibility to apply for the
Lead P.A. position because of the transfer do not constitute an
adverse employment action that satisfies the third prong of the
plaintiff's prima facie case.  Defendant also argues that even
if the plaintiff proved he suffered an adverse employment
action, he cannot establish circumstances giving rise to an
inference of gender discrimination necessary to satisfy the
fourth prong.

In response, plaintiff first argues that he was qualified for the position, satisfying the second prong.  Plaintiff also argues that the third prong has been satisfied because he suffered an adverse employment action. He also argues that the defendant discriminated and retaliated against him based on gender. Finally, the plaintiff argues that the defendant's proffered reasons for its actions were pretextual.

**A. Adams was not Qualified for the Lead P.A. Position**

The Court finds that plaintiff was not qualified for the position of Lead P.A.  In order to be considered a "qualified," applicant for a position, an employee must be "eligible" for the position. Torrel v. City of New York, 01CIV9895(DLC), 2003 WL 22335006, at *4 (S.D.N.Y. Oct. 14, 2003), aff'd, 114 Fed. Appx. 14 (2d Cir. 2004). As this Court noted in its "Ruling on Post-Trial Motions," which remains applicable now:

> The uncontroverted evidence supports defendant's claim that, due to the hospital's job posting policy, Rienzo, the only department candidate, had priority for the Lead P.A. position in the Department of Surgery.  Indeed, the plaintiff himself testified that, when the job was first posted, he was not in the Department of Surgery and that he could not apply as a departmental employee.  Tr. Feb. 12, 2008 at 122-23. The court has not been able to identify sufficient evidence, nor has the plaintiff cited to evidence in the record, to show that Adams, who was not an employee of the Department of Surgery in October 2003, was eligible, and hence qualified, for the position, where an internal candidate was available.  The record simply does not provide sufficient evidence for a jury

to conclude that Adams was qualified for the Lead P.A.
position.

[Doc. #119 at 6-7].

Plaintiff contends that the jury found that the plaintiff
was eligible for the position, but the Court finds that the
jury's determination that Adams was qualified for the position
is not supported by the record. Plaintiff also argues that a
representative of the defendant suggested to plaintiff that he
apply for the Lead P.A. position that was to be created,
indicating that this proved plaintiff was qualified for the
position.  However, this conversation occurred in January or
February 2003, before the plaintiff left the Surgery Department
in March 2003, when he would have been eligible for a preference
given to internal candidates.  [Tr. Feb. 12, 2008, at 223].  The
issue is not whether plaintiff had the qualifications to perform
the job; it is whether he would have been eligible to apply as a
non-departmental candidate when there was an internal candidate
willing to take the revised position.  Plaintiff proffered no
evidence to show that the allowance for exceptions in the job
posting policy would have been applicable in the situation here.

**B. Adams Did Not Suffer an Adverse Employment Action**

The Court finds that plaintiff did not suffer an adverse
employment action. To prevail on a Title VII claim, a plaintiff

16

must prove that he suffered an adverse employment action as a
result of his employer's discriminatory conduct.  Beyer v.
County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). There must
be a causal link between an employer's discriminatory conduct
and the alleged adverse employment action. "A plaintiff sustains
an adverse employment action if he or she endures a 'materially
adverse change' in the terms and conditions of employment."
Galabya v. New York City Board of Educ., 202 F. 3d 636, 640 (2d
Cir. 2000) (citations omitted). To be 'materially adverse', a
change in working conditions must be 'more disruptive than a
mere inconvenience or an alteration of job responsibilities'".
Id. A materially adverse change might be indicated by "a
termination of employment, a demotion evidenced by a decrease in
wage or salary, a less distinguished title, a material loss of
benefits, significantly diminished material responsibilities, or
other indices . . . unique to a particular situation." Id.

     Courts have recognized that, if the alleged adverse
employment action is created by plaintiff's own conduct, then
the requirement of an adverse employment action is not
satisfied. See Mullins v. Potter, No. 04-72965, 2005 WL 2396997,
at *4 (E.D. Mich. Sept. 28, 2005) (finding no adverse employment
action where the Post Office offered plaintiff the option to
work at the Ann Arbor Post Office or in her hometown of Livonia
and the plaintiff chose not accept these transfers and to

continue working in Plymouth). <u>Garrett v. Bd. of Trustees of</u> <u>Univ. of Alabama</u>, 354 F. Supp. 2d 1244, 1248 (N.D. Ala. 2005), <u>aff'd</u>, 507 F. 3d 1306 (2007) (holding that a voluntary transfer to a lesser paying position is not an adverse employment action).

However, the Second Circuit has recognized that a transfer may, in certain circumstances, constitute an adverse employment action, even if requested by plaintiff. <u>See</u> <u>Pellier v. British</u> <u>Airways, Plc.</u>, No. Civ.A. 02-CV-4195, 2006 WL 132073 (E.D.N.Y. Jan. 17, 2006) (citing <u>Richardson v. N.Y. State Dep't of Corr.</u> <u>Servs.</u>, 180 F.3d 426, 444 n. 4 (2d Cir. 1999)(finding sufficient evidence to support a conclusion that a transfer requested by plaintiff constituted an adverse employment action where there was evidence that another, more desirable, lateral job opening for which plaintiff was qualified may have existed but was not offered to plaintiff)).

Adams left the Department of Surgery for the Department of Medicine in March 2003.  Defendant argues that Adams "chose to transfer" to the Department of Medicine, [Doc. #142-1 at 13], while plaintiff argues that he transferred from the Department of Surgery "against his will and his desire."  [Doc. #149-1 at 5].

As this Court stated in its Ruling on Post-Trial Motions:

The evidence overwhelmingly indicates that Adams made a *voluntary* move, albeit, from his perspective, under less than ideal circumstances and under protest. [Doc. #109 at 2]. The defendant told Adams, as well as the two female P.A.'s Rienzo and Orosco, that he had three options for long-term employment: stay in the department with a 20% pay raise and the new schedule with call, transfer to another department, or seek other employment. Additionally, Adams was told by Dr. Seashore that there would be a temporary dispensation from the call requirement, and that he could stay in the Department of Surgery, without working the call hours, until such time as the new P.A.'s were onboard. Tr. Feb. 12, 2008 at 55. The evidence shows that Adams had options presented to him by the hospital and elected to leave the Department of Surgery. Thus, the court finds that a reasonable jury could not have concluded that Adams suffered an adverse employment action.

[Doc. #119 at 10-11].  This Court further found:

Even if the plaintiff had introduced evidence from which a reasonable jury could conclude that his transfer was involuntary, there is no evidence that the transfer resulted in "significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Galabya, 202 F.3d at 640. "'[I]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action.'" Fairbrother v. Morrison, 412 F.3d 39 at 56 (2d Cir. 2005)(quoting Williams v. R.H. Donnelley, Corp., 368 F.3d 123 at 128(2d Cir. 2004)).

[Doc. #119 at 11].  The Court finds that the plaintiff has not brought forth any evidence on summary judgment to establish that this Court's previous determination should be changed.

### C. The Circumstances Do Not Give Rise to an Inference of Gender Discrimination

As this Court stated in the Ruling on Post-Trial Motions:

> The mere fact that Adams is male, while Rienzo is female, does not evidence gender discrimination. 'More is needed than proof that a qualified male [female] was chosen over a qualified female [male].' <u>Kachel v. City of Pueblo</u>, F. Supp. 749, 755 (D. Colo. 1990), <u>aff'd</u>, 945 F.2d 411 (10th Cir. 1991)(citing <u>Olson v. Philco-Ford</u>, 531 F.2d 474 (10th Cir. 1976)).

[Doc. #119 at 12-13]. Plaintiff has offered no proof that he and the female P.A.'s were treated differently because of gender. Plaintiff argues that defendant gave the Lead P.A. position to a less-qualified female over the more qualified-male plaintiff but, as stated above, plaintiff did not in fact apply  for the lead P.A. position at the time it was posted (because it required call) and Rienzo accepted it later after it was modified to eliminate call, which precluded any requirement for posting outside the department. Prior to the creation of the Lead P.A. position, all three P.A.'s were given the same employment options: 1) remain in the Department of Surgery and pull call; 2) transfer to a different department within the hospital; or 3) seek other employment.  Plaintiff chose to transfer departments, one female left the hospital and the other, Ms. Rienzo decided to remain until the call-duty was imposed; this does not give rise to an inference of gender discrimination.

Plaintiff also argues that the defendant retaliated against him for filing a complaint about having to pull call and this rises to the level of gender discrimination. Plaintiff claims that this retaliation occurred in the form of a forced departmental transfer.  However, the evidence is incontrovertible that plaintiff, along with the female P.A.'s, was given a choice about whether to leave the department or remain, knowing that the call requirement would eventually be imposed, and plaintiff elected to leave sooner, even though he was advised of the probable creation of the Lead PA position. There is no evidentiary basis for plaintiff's claim of retaliation nor is there evidence that plaintiff was forced to transfer due to gender discrimination because, once Ms. Orosco left the Transplant Surgery Department, the doctors who were imposing the call requirements, Dr. Stahl and Dr. Seashore, hired a black male P.A. to replace Ms. Orosco.

Finally, plaintiff argues that defendant's proffered reasons for its actions were pretextual and suggests two specific reasons.  Plaintiff argues that defendant told him no exceptions to the policy requiring P.A.'s to pull call would be made, yet plaintiff claims exceptions were made to accommodate the two female P.A.'s.  However, it is clear that neither female received a permanent dispensation, until Ms. Rienzo took the Lead P.A. position.  Ms. Rienzo chose to stay in the Surgery

Department without pulling call until all the new P.A.'s were hired, the arrangement offered to all three P.A.'s. Tr. Feb. 12, 2008 at 212-13.  Ms. Orosco was given a temporary dispensation after her supervisor requested she not pull call until the new P.A's were hired, but she was never permanently excused from the requirement and left her job before any call requirement was imposed.  Tr. Feb. 14, 2008 at 16.

Plaintiff also contends that defendant's actions in awarding the Lead P.A. position to Ms. Rienzo were pretextual in that defendant went beyond simply following the hospital employment policy.  Plaintiff alleges a "secretive" process in hiring Ms. Rienzo for the Lead P.A. position. [Doc. #149-1 at 23].  However, this alleged secrecy is not supported by the record, given the evidence that the policy of the department was to give priority to departmental candidates and plaintiff was no longer in the department.  Ms. Rienzo, as the only P.A. in the department at the time the position was created, had priority for the position. Dr. Stahl testified that he asked her under what circumstances she would accept the job, as there had been no applicants for the posted position, leading to the removal of the call requirement.  Had she refused the redesigned position, then plaintiff would have been able to apply when the position was posted and opened up to all departments.  Defendant has

provided a legitimate rationale for its conduct.  See Tojzan,
2003 WL 1738993, at *4.

Plaintiff has failed to provide any evidence which credits
a factual issue about the reasons behind the defendant's actions
in regards to requiring call and its Lead P.A. hiring decision.
The burden was on plaintiff to produce evidence from which a
fact finder could conclude that the proferred reasons were false
and that discrimination against plaintiff on the basis of his
gender was the real reason.  See St. Mary's Honor Ctr., 509 U.S.
at 515. Because YNHH's reasons are genuinely "neutral" and not a
"pretext for discrimination," id., there is simply no evidence
from which a jury could infer that defendant's employment
decision was more likely than not motivated, even in part, by
gender discrimination.  See Stern, 131 F.3d at 312.

Plaintiff may disagree with defendant's process for filling
the Lead P.A. position, but unfairness is not the equivalent of
gender discrimination.  "[F]ederal courts are not in the
business of adjudging whether employment decisions are prudent
or fair. Instead, [a federal court's] sole concern is whether
unlawful discriminatory animus motivates a challenged employment
decision." Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002)
(quoting Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir.
2002)).  Plaintiff has failed to "do more than simply show that
there is some metaphysical doubt as to the material facts."

<u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586.  It is clear that the evidence is, at most, "merely colorable" and "not significantly probative" and, as such, summary judgment is appropriate.  See <u>Anderson</u>, 4776 U.S. at 249-50.

VI.   <u>CONCLUSION</u>

  For the reasons stated, defendant's Motion for Summary Judgment [Doc. # 143] is **GRANTED**.  This is **not** a recommended ruling.  The parties consented to proceed before a United States Magistrate Judge **[Doc. #51]** and on December 13, 2007, this case was transferred to this Court for all purposes, including entry of judgment.

  Judgment will enter for the defendant. The Clerk is directed to close the case.

  SO ORDERED at Bridgeport this 25th day of September 2012.


        _____/s/_____
        HOLLY B. FITZSIMMONS
        UNITED STATES MAGISTRATE JUDGE